UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PATRICIA FAIRMAN,


                                        Plaintiff,

                                                        DECISION AND ORDER

                                                        03-CV-6137L


                v.

WILLIAM C. HURLEY,



                                        Defendant.
_____


## INTRODUCTION

        Plaintiff, Patricia Fairman, commenced this action against defendant, William C. Hurley,

seeking damages regarding the alleged theft of three horses that were taken from a farm owned and

operated by Ralph Urban.  Urban is not a party to this action.  Nevertheless, it is clear to the Court

that this action is the latest in a series of federal and state court cases that concern a dispute between

Urban and defendant Hurley that dates back seventeen years. One federal court characterized this

dispute as "a feud bordering on Hatfield-McCoy proportions, complete with vicious name calling

and threats against person, property and animals." *In re Ralph Urban*, No. 91-B-15142, slip. op.

(Bankr. S.D.N.Y. Mar. 27, 1997) (unpublished opinion).

        This Court is aware of at least five other court cases filed by Urban or Hurley against the

other concerning their feud, which has its origins in a contract for the sale of certain real property

located in Yates County.  The dispute has made its way into two Bankruptcy Courts, *Id.*; *In re Urban*, 202 B.R. 565 (Bankr. S.D.N.Y. Mar. 31, 1994)(No. 91 B 15142), three District Courts, *In re Urban*, 1998 WL 9389 (S.D.N.Y. Jan. 13, 1998)(No. 96 CIV. 8567); *Urban v. Hurley*, 261 B.R. 587 (S.D.N.Y. May 10, 2001)(No. 00 CIV. 7893); *Urban v. Hurley*, 2003 WL 23496898 (W.D.N.Y. May 22, 2003)(No. 02-CV-6329L), the Second Circuit Court of Appeals (twice), *In re Urban*, 125 Fed.Appx. 336, 2005 WL 387909 (2d Cir. Feb. 18, 2005)(No. 03-5046); *In re Urban*, Second Circuit Docket No. 04-0149, unpublished order dismissing appeal as frivolous (2d Cir. Aug. 6, 2004), and it appears that an action is still pending in New York State Supreme Court, Yates County, *Hurley v. Urban, et al.*, N.Y. Sup. Ct. Yates Co. Index No. 01-415.  Even the United States Supreme Court has been pulled into the frey and has considered the matter four times, the last time being in March of this year. *Urban v. Hurley*, ___ U.S. ___, 125 S.Ct. 1655 (Mar. 21, 2005)(Mem.); Urban v. Hurley, ___ U.S. ___, 125 S.Ct. 968 (Jan. 18, 2005)(Mem.); *Urban v. Hurley*, 535 U.S. 930 (2002)(Mem.); *Urban v. Hurley*, 534 U.S. 1123 (2002)(Mem.).

Now, this action has been commenced, not by Urban in his name, but by plaintiff.  It is clear that plaintiff and Urban have a long-standing personal relationship of some sort and that, although he is not present as a party, Urban is certainly here in spirit.[1]  In fact, with the exception of the complaint, plaintiff, a resident of New Jersey, has signed all of the pleadings as: "Patricia Fairman c/o Ralph Urban."(Dkts. # 5, 6, 7, 8). After firing her attorney, plaintiff also directed that all correspondence from the Court relating to this matter be sent to her at Urban's New York City address. (Dkt. #3). Moreover, Urban attempted to act as a process server in this case and he filed an

---

[1] Defendant claims that plaintiff is Urban's long-time girlfriend. (Dkt. #9, ¶9).

"affidavit" in support of the action. (Dkt. #8). He also communicated directly with the Court by facsimile regarding the status of the case. (*See* unfiled facsimiles dated April 29 and 30, 2005). Plaintiff also has been actively involved in Urban's other court actions since at least 1989, providing affidavits and other evidentiary support on his behalf. (*See* Dkt. #9, Exs. D, E).

Having introduced the cast of players and set the historical stage, I turn now to what one could only hope will be the final act (in Federal Court, at least) of this long-running, overly-acted drama.

## PROCEDURAL POSTURE OF THE INSTANT CASE

On March 26, 2003, plaintiff, then represented by counsel, simultaneously filed the complaint and a motion for a temporary restraining order.  Plaintiff alleged that in February of 2003, defendant served Urban with two legal notices[2] purporting to show that defendant had obtained a lien on the horses and that he intended to sell them. Plaintiff asserted that the lien was fraudulently obtained by defendant under the false assumption that Urban owned the horses.  Plaintiff alleged that she owned the horses, not Urban, and that she was not served with either notice.  Plaintiff asserted common law claims for conversion, unjust enrichment, fraud, and intentional infliction of emotional distress, as well as a purported statutory claim for violation of the N.Y. Lien Law.  She sought $30,000 in

---

[2] The first notice, entitled "Notice of Owner of Sale of Personal Property to Satisfy Lien," allegedly gave notice to Urban that defendant claimed to be the holder of a lien pursuant to N.Y. Lien Law § 183 for $3000 for the boarding and care of the horses.  It also gave notice to Urban that if the $3000 lien was not satisfied on or before January 1, 2003, the horses would be sold at a private sale.  The other document, entitled "Notice of Private Sale," allegedly gave notice under N.Y. Lien Law § 201 of the January 30, 2003 sale. Copies of the notices are not part of the record, although plaintiff claims, incorrectly, that they are attached as exhibits to her complaint.

compensatory damages and $10,000,000 in punitive damages.  She also sought a TRO enjoining the sale of the horses and vacating the lien. (Dkts. # 1, 2).

One month before she filed the complaint and motion, plaintiff sought the same injunctive relief from the District Court for the Southern District of New York in connection with an appeal from the Bankruptcy Court in that district. Alleging to be the "principle creditor" (sic) of the Ralph Urban bankruptcy estate, plaintiff made the same allegations there as she did in her complaint here - namely, that defendant fraudulently obtained a lien, stole her horses, and had no authority to sell them because she was the horses' true owner, not Urban.(Dkt. #9, Ex. E). In an unpublished memorandum dated March 4, 2003, U.S. District Court Judge John S. Martin denied the motion on the grounds that plaintiff failed to establish likelihood of success on the merits. *See In re Urban*, S.D.N.Y. Case No. 02-CV-9632, docket entry dated 03/04/2003.  Three weeks later, plaintiff sought the same relief from this Court.

By letter dated March 27, 2003, I notified plaintiff's counsel that I was denying the motion for a TRO.[3] It was as clear then as it is today that plaintiff was attempting to collaterally attack the proceedings in Yates County Supreme Court, and that she was looking for a second bite of the apple after having been rejected by the Southern District just three weeks earlier. On April 1, 2003, the Clerk of the Court issued a summons directed to defendant. However, plaintiff never filed an affidavit of service stating that defendant was served with process, and defendant never filed an answer.

---

[3] Defendant also received a copy of the Court's March 27, 2003 letter.

Having lost her second bid for a TRO, it appears that plaintiff lost all interest in pursuing the action. For the next two years, plaintiff took no steps to prosecute this case whatsoever. The only document she filed in that two-year period was a notice of dismissal of her attorney. (Dkt. #3). On April 18, 2005, therefore, I issued an Order to Show Cause requesting a status update on the case and warning plaintiff that she would face dismissal for failure to prosecute if she did not respond. On May 2, 2005, plaintiff, now proceeding *pro se*, filed a response that sets forth in detail the status of the *state court action* between Urban and defendant. As for the status of the instant action, plaintiff reports only that it is "still pending." Plaintiff reported that discovery has not begun because, based on what Urban has advised her, she fears defendant will pursue discovery for ten or twenty years in order to delay the case indefinitely. (Dkt. #5).

Plaintiff essentially admits, then, that she took no steps to prosecute this case since she filed her complaint more than two years ago. It seems that, during that time, she and Urban were busy pursuing the other court cases and appeals then pending in Yates County Supreme Court, this District Court, the Second Circuit Court of Appeals, and the United States Supreme Court.  They were unsuccessful in every case and, to this Court's knowledge, have not obtained a favorable ruling regarding the original dispute over the real property, the allegedly fraudulent lien, or the alleged theft and sale of the horses.

Now that the Court has reminded plaintiff that this action is still pending, she suddenly (and for the first time) has developed an interest in prosecuting it.  Perhaps motivated by the failed outcomes in every other court action between Urban and defendant, plaintiff now moves the Court for certain relief.

## MOTION FOR DEFAULT JUDGMENT

On May 5, 2005, plaintiff filed both a "Notice of Default," which sought a Clerk's Entry of Default pursuant to FED. R. CIV. P. 55(a) (Dkt. #7), and a motion "for summary judgment against Hurley on default," which the Court construes as a motion for default judgment pursuant to FED. R. CIV. P. 55(b) (Dkt. #8). The Clerk of the Court, however, did not enter a default against defendant because the file contained no affidavit of service that the summons and complaint had been properly served on the defendant. Thus, defendant's alleged failure to answer or "otherwise defend" the action has not been proven. FED. R. CIV. P. 55(a) ("When a party . . . has failed to plead or otherwise defend as provided by these rules *and that fact is made to appear by affidavit or otherwise*, the clerk shall enter the party's default.") (emphasis added); *see also* 10 Moore's Federal Practice, § 55.11[3][b] (Matthew Bender, 3d ed.) ("the plaintiff who seeks entry of default must show the fact of default by evidence, usually by affidavit, which shows the timing of service of the summons and complaint and avers that an answer or motion was not served within the allotted time.").

Without first obtaining an entry of default, plaintiff cannot obtain a default judgment from this Court. *See* LOCAL R. CIV. P. 55(b). In any event, as set forth below, plaintiff is not entitled to default judgment because she has failed to prove that defendant was ever served with process in accordance with FED. R. CIV. P. 4(e), and she has provided no basis for equitable relief.

FED. R. CIV. P. 4(e) outlines the proper methods of serving a summons and complaint. Rule 4(e)(1) provides that a party may serve process in accordance with the laws of the state in which the district court sits. Rule 4(e)(2) provides that service may also be made by personally delivering a copy of the summons and complaint to the defendant, by leaving copies thereof at the individual's

residence with a person of suitable age and discretion, or by delivering a copy thereof to defendant's authorized agent.  Rule 4(m) requires that service be effectuated within 120 days after filing the complaint.

There is no admissible evidence in the record that defendant was served via a method authorized by Rule 4(e). In her affidavit, plaintiff states "upon information and belief" that her former attorney served defendant personally with the summons and complaint through a process server.  She fails to offer any admissible proof in support of that contention. She did not file an affidavit from her former attorney. Instead, she claims that he has "forgotten" which process server he used and has "lost or misplaced" the affidavit of service.  (Dkt. #8).

Defendant, who filed an affidavit in opposition to plaintiff's motion, denies that he was ever personally served with the summons and complaint by a process server. He asks that the Court dismiss the action for lack of personal jurisdiction. (Dkt. #9, ¶18).[4]

Plaintiff's affidavit, and the statements she makes "upon information and belief," are insufficient to establish that she properly served process on defendant, particularly in light of defendant's sworn statement to the contrary. *Cf. Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 55 n.8 (2d Cir. 2003)(finding that assertion made 'upon information and belief' in an affidavit could not be considered admissible evidence in summary judgment context); *Dellacava v. Painters Pension Fund of Westchester and Putnam Counties*, 851 F.2d 22, 26 (2d Cir.1988)(same).

---

[4]  Because defendant never filed an answer to the complaint, he was never added as a party to the action, and his address was not added to the Court's docket in the case.  Therefore, he did not receive notice of the Court's Order to Show cause through the usual process.  It was only when plaintiff served defendant with a copy of her response to the Court's Order, as well as her motion for default, that defendant was prompted to file his own response.

Moreover, plaintiff's other allegations regarding attempted service fail to establish that she served defendant in a manner authorized by Rule 4(e). For instance, her contention that her attorney "vaguely remembered that [at] the very least" he sent defendant a copy of the summons and complaint through first-class mail does not establish proper service. (Dkt. #8). Likewise, the unsworn statement of Urban in his "affidavit of service"[5] that "(during the first four or five months of this action) he served of (sic) Summons and Complaint upon Hurley, at his Elmira address, by Fed Ex" is insufficient to establish proper service. (Dkt. #6). Neither the Federal Rules nor New York's CPLR permit service of a summons and complaint by simply mailing a copy to a defendant via the U.S. Postal Service or an express delivery service. *Pearson v. Board of Educ. of City of New York*, No. 02 Civ. 3629, 2004 WL 2297354, *4 (S.D.N.Y. Oct. 12, 2004); *Olympus Corp. v. Dealer Sales & Service, Inc.*, 107 F.R.D. 300, 305 (E.D.N.Y.1985) ("New York law does not expressly authorize service by an express delivery service such as Federal Express.").  Although New York state law allows a plaintiff to attempt service by mail, *see* C.P.L.R. § 312-a(a), such service is not effective unless the defendant signs and returns an "acknowledgment of receipt." *Id*. § 312-a(b). Here, no such acknowledgment was signed.  Because plaintiff has failed to show that defendant was served properly, her motion for default judgment is denied.

That defendant received actual notice of the pending action does not change the result. *Buggs v. Ehrnschwender*, 968 F.2d 1544, 1548 (2d Cir.1992)(citing *Markoff v. South Nassau Cmty. Hosp.*,

---

[5] Plaintiff styled Docket #6 an "affidavit of service," which is authored by Urban. However, it is not in admissible form.  It was not subscribed to nor affirmed under the penalty of perjury.  *See DeMars v. O'Flynn*, 287 F.Supp.2d 230, 242-43 (W.D.N.Y.2003) (citing 11 Moore's Federal Practice, § 56.14[1][b] (Matthew Bender 3d ed.))("By definition, an affidavit is a sworn document, declared to be true under the penalties of perjury."); *see also* 28 U.S.C. § 1746.

61 N.Y.2d 283, 288 (1984))("Actual notice alone will not sustain the service or subject a person to

the court's jurisdiction when there has not been compliance with prescribed conditions of service.");

*Morrison v. New York State Div. for Youth Children and Family Ser.*, No. 98-CV-643, 2000 WL

532762 (N.D.N.Y. Apr. 25, 2000) ("Notice of suit received by means other than those authorized

by statute or rule cannot serve to bring a defendant within the jurisdiction of the court.").

## DISMISSAL OF THE CASE WITH PREJUDICE

By Decision and Order dated May 31, 2005 (Dkt. #10), the Court ordered plaintiff to show

cause why the case should not be dismissed based on: (1) her failure to serve process timely or in

a manner sufficient, pursuant to FED. R. CIV. P. 4(m); (2) her failure to prosecute this action for over

two years, pursuant to LOCAL R. CIV. P. 41.2; and (3) lack of subject matter jurisdiction based on her

failure to allege facts sufficient to show that she could recover $75,000 in damages, the minimum

statutory jurisdictional amount for diversity cases.

In an apparent concession that she has neither good cause for failing to serve process timely,

nor any excuse for not prosecuting this action for over two years, plaintiff has now filed a motion

to withdraw the action without prejudice. (Dkt. #11). Plaintiff's response fails to address any of the

issues raised in the Court's May 31, 2005 Order (Dkt. #10).

Plaintiff's motion to withdraw the case without prejudice is denied. She cannot escape

adjudication of the action on the merits, and the Court hereby dismisses the action with prejudice.

First, pursuant to Rule 4(m), the Court, on its own initiative after notice to the plaintiff, shall

dismiss the action for failure to serve process within 120 days.[6]  Plaintiff has failed to show good

---

[6]  Pursuant to Rule 4(m) dismissal for failure to serve process is without prejudice. That
(continued...)

cause or excusable neglect as to why service of process was not effectuated.  Plaintiff is not entitled

to equitable relief from this Court now, more than two years after the action was commenced, in light

of the prejudice to defendant and her failure to prosecute this action in the interim.[7]

Second, dismissal with prejudice is warranted for failure to prosecute, pursuant to LOCAL R.

CIV. P. 41.2 and FED. R. CIV. P. 41(b).

Third, the Court dismisses the action with prejudice because the complaint fails to allege

facts sufficient to show that plaintiff could recover $75,000 in damages, the minimum statutory

jurisdictional amount required for diversity cases. 28 U.S.C. § 1332(a).  "[W]ith mounting federal

case loads, ... it has become doubly important that the district courts take measures to discover those

suits which [do not belong in a federal court] and to dismiss them when the court is convinced to a

---

[6](...continued)
distinction is of no moment here, however, because the action is dismissed with prejudice on
other grounds.

[7] Because she is proceeding *pro se*, the Court has read plaintiff's pleadings as raising the
strongest arguments that they suggest.  In her default judgment papers, plaintiff appears to raise
possible attorney neglect as a reason for her failure to serve timely.  Attorney neglect, however,
does not constitute good cause. *McGregor v. United States*, 933 F.2d 156, 159-60 (2d Cir.1991);
*see also Volat v. Runyon*, 125 F.3d 846, 846+ (2d Cir.1997) (Table, text in Westlaw, 1997 WL
615981); *Delicata v. Bowen*, 116 F.R.D. 564, 566 (S.D.N.Y.1987).  Moreover, plaintiff waited
more than two years to raise the issue. This is not the first time she was aware that there were
potential problems with service. Her notice of attorney dismissal shows that as early as
September 2003, she was aware of the fact that no affidavit of service was on file. At that time,
she requested a copy of her file from the Court, including an "Affidavit of Service against Hurley
(if there is one, which I doubt)."(Dkt. #3). Yet, plaintiff never moved for an extension of time to
serve defendant, nor did she request equitable relief from the Court on the ground that defendant
received actual notice. In finding no good case or excusable neglect, the Court also cannot ignore
the fact that plaintiff and Urban (who plaintiff admits is advising her about this case, *see* Dkt. #5)
are experienced litigators in federal and state courts, and presumably are quite familiar with the
CPLR and the Federal Rules after more than a decade of litigation.  This is not the case of an
inexperienced *pro se* litigant who may have been confused by the processes involved.

legal certainty that the plaintiff cannot recover an amount in excess of [the minimum statutory jurisdictional amount]." *Deutsch v. Hewes Street Realty Corp.*, 359 F.2d 96, 98 (2d Cir.1966)(internal quotation marks and citation omitted).  This is precisely one of those cases.

The Second Circuit has held that "[a] party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount. This is so because when a party chooses to proceed in federal court, [the party] knows or should know whether [the] claim is within the statutory requirement as to amount." *Tongkook America, Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir.1994).  "[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938) (footnote omitted).

Here, plaintiff's complaint alleges that the value of the horses was $30,000. (Dkt. #1, ¶43). Inexplicably, in her *ad damnum* clause, plaintiff seeks $1,000,000 in compensatory damages.  Yet, the complaint contains no allegations of other compensable damages.  Plaintiff also seeks punitive damages on the fraud claim because defendant "willfully, flagrantly and with malice a forethough (sic), unlawfully deprived plaintiff of her property." (Dkt. #1, ¶67).  Although punitive damages are considered when calculating the amount in controversy, if punitive damages are not recoverable under New York law on the claim for which they are sought, then the amount should not be included

in the calculation.  "It is a question of law for the Court, not the jury, to decide whether a plaintiff has established that punitive damages are available." 15 Moore's Federal Practice § 102.106[4].

Under New York law, punitive damages ordinarily are not recoverable in a garden-variety fraud claim. *See Reinah Development Corp. v Kaaterskill Hotel Corp.*, 59 N.Y.2d 482, 488 (1983); *RKB Enterprises Inc. v Ernst & Young*, 182 A.D.2d 971, 973 (3rd Dept.1992). However, punitive damages may be recovered when the fraud is gross, involves high moral culpability, or is aimed at the general public. *Giblin v. Murphy*, 73 N.Y.2d 769, 772 (1988).  Here,"[p]laintiff has not alleged facts sufficient to demonstrate that defendant['s] conduct rose to the level of high moral culpability which must be reached to support a claim for punitive damages." *RBK Enterprises*, 182 A.D.2d at 972; *see also Atkins Nutritionals, Inc. v. Ernst & Young, LLP.*, 301 A.D.2d 547, 549 (2d Dept.2003)("the claim for punitive damages should have been dismissed, as the plaintiffs failed to allege facts sufficient to demonstrate that the conduct of [defendant] rose to the level of moral culpability which must be reached to support a claim for punitive damages"). Nor does plaintiff's complaint allege a fraud aimed at the general public. This case concerns nothing more than a personal feud between two landowners.  It is not the type of action involving the "very high threshold of moral culpability" required to sustain punitive damages. *Giblin v. Murphy*, 73 N.Y.2d at 772.

When viewed in the context of the history of the litigation between Urban and Hurley, it is clear that the complaint as pleaded was done so deliberately and without good faith, in order to reach the amount in controversy threshold to confer jurisdiction. This fact is made more apparent based on plaintiff's failure to provide any additional information to the Court regarding how she expected to reach the minimum amount in controversy.  I find that, to a legal certainty, plaintiff could never

recover an amount of damages exceeding $75,000 based on the allegations in her complaint. Accordingly, the action is dismissed for the additional reason that the Court lacks subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). *See Tongkook America, Inc.*, 14 F.3d at 786.

## CONCLUSION

Plaintiff's motion for default judgment (Dkt. #8) is denied.  Plaintiff's motion to withdraw the complaint without prejudice (Dkt. #11) is denied.

Plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        June 22, 2005.